# 2006 DTA 2

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS/GUAYAMA/FAJARDO**
**PANEL XIII**

ASOCIACIÓN DE RESIDENTES DE LA URB. EL PRADO, INC. *ET ALS.*
Demandantes-Apelantes

v.

ACADEMIA LA MILAGROSA, INC., *ET ALS.*
Demandados-Apelados

Núms. Cons. KLCE-2005-00624 / KLAN-2005-00767

San Juan, Puerto Rico, a 6 de octubre de 2005

Panel sustituto integrado por su Presidente, el Juez Rivera Román, el Juez Soler Aquino y la Juez Coll Martí

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Acude ante nos la Asociación de Residentes de Urb. El Prado, Inc. (en adelante la Asociación) vía *certiorari* para que revisemos una determinación del Tribunal de Primera Instancia de Guayama (en adelante T.P.I.) mediante la cual se desestimó una petición de *injunction*. De la misma resolución acudió ante nos, mediante el recurso de apelación, la Academia La Milagrosa (en adelante la Academia). Por tratarse de las mismas partes y cuestionándose en ambos recursos una resolución, consolidamos los casos el 29 de septiembre de 2005.

Por entender que el T.P.I. adjudicó la controversia correctamente se confirma la determinación, pero concluimos que la resolución de 2 de diciembre de 2004 realmente constituyó una sentencia que adjudicó todas las controversias entre las partes.

### I

La Asociación presentó, el 27 de enero de 2004, una demanda de Entredicho Preliminar y Permanente contra la Academia mediante la cual solicitó que se reubicara un depósito de basura y que se proveyera un acceso a la escuela a través de la Carretera Estatal #171, de forma que no perturbara la paz y tranquilidad de los vecinos.

La Academia solicitó la desestimación de la petición el 13 de febrero de 2004 porque, alegadamente, no cumplía con los requisitos necesarios para el pronunciamiento de un *injunction*. Se celebró una audiencia en el T. P.I. el 9 de marzo de 2004. Se informó al T.P.I. que la controversia en cuanto al depósito de basura había terminado, pues la Academia lo había reubicado en otra área. Quedaba por dilucidar lo relacionado al tránsito vehicular. El T.P.I. ordenó la inclusión del Municipio de Cayey en el pleito el 9 de marzo de 2004.

La Asociación enmendó la solicitud de *injunction* para incluir al Municipio de Cayey (en adelante Municipio) como demandado el 14 de abril de 2004. Se celebró una vista ocular el 25 de mayo de 2004. El Municipio radicó una moción de desestimación el 15 de junio siguiente y alegó que la Junta de Calidad Ambiental y la Administración de Permisos y Reglamentos (en adelante A.R.P.E.) tenían jurisdicción primaria para atender las controversias del caso.

Al comparecer las partes al T.P.I., el 25 de junio de 2004, anunciaron al tribunal que habían llegado a un acuerdo provisional. El T.P.I. transcribió el acuerdo en su resolución de 1 de diciembre de 2004 en los siguientes términos:

Lcdo. Juan Mari Pesquera: "*la parte demandante y La Academia La Milagrosa, Inc., como medida provisional y estipuladas por ambas partes, acuerdan que a partir del primer día de clases, en agosto del presente año, tengo entendido que es el 9 de agosto, el primer día de clases. La Academia demandada se compromete a organizar el transito garantizando que todo vehículo entrará a los predios de la academia por el acceso de la carretera 171 y con salida por uno de los portones de la calle B. Esa sería la estipulación a la que hemos llegado*".

El T.P.I. se comprometió a dictar y notificar una resolución preliminar incluyendo la estipulación

anteriormente transcrita, pero ello no ocurrió. Ninguna de las partes ha cuestionado la certeza de la estipulación citada, aunque la Academia sostiene que aquella estaba sujeta a una condición resolutoria que ya se cumplió, que era obtener un permiso de uso para la escuela.

La Asociación solicitó mediante moción al T.P.I. que emitiera la sentencia por estipulación. Al esto no suceder la Asociación solicitó la inhibición del juez, éste se inhibió y se asignó el caso a otro juez.

Así las cosas, el T.P.I. dictó resolución y orden el 1 de diciembre de 2004, notificada el siguiente 17 de diciembre, mediante la cual desestimó el recurso de *injunction* a base de la doctrina de jurisdicción primaria y ordenó a las partes a que dieran fiel cumplimiento al acuerdo hecho en Corte el 25 de junio de 2004 y que antes transcribimos. La Academia solicitó reconsideración, la cual fue declarada no ha lugar mediante resolución notificada el 3 de mayo de 2005. La Asociación radicó el recurso de *certiorari* (KLCE-2005-00624) el 25 de mayo de 2005. La Academia presentó un recurso de apelación (KLAN-2005-00767), el 30 de junio de 2005. Por estar íntimamente relacionados ambos recursos, los consolidamos el 29 de septiembre de 2005. El Municipio de Cayey ha comparecido a solicitar la desestimación de la petición de *certiorari*.

Sostiene la Asociación en su petición de *certiorari* que la controversia versa sobre un acceso vehicular y peatonal operado por la Academia de manera ilegal y negligente, el cual constituye un estorbo público para los vecinos residentes de la Urbanización El Prado. Como fundamento para la solicitud de *injunction* se afirma que el acceso vehicular y peatonal les está causando agravios a la paz, serenidad y tranquilidad de las familias que residen en los alrededores de la Academia. Se alega, además, que se crea en la comunidad una congestión vehicular en horas críticas del día (7:00am-8:15am y de 2:30pm-3:30pm) y provoca a los vecinos dificultad para entrar y salir de sus residencias. Se aduce que la situación planteada constituye una excepción a la doctrina de jurisdicción primaria porque envuelve un agravio de patente intensidad a sus derechos y reclaman acción. Los errores señalados por la Asociación en la petición de *certiorari* son los siguientes:

*"1. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guayama, al desestimar el recurso de injunction basado en la doctrina de jurisdicción primaria, la que no es de aplicación al caso de epígrafe por tratarse de un acceso vehicular y peatonal, el cual es ilegal y constituye un estorbo público.*

*2. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guayama, al no declarar incurso en desacato a la parte demandada y no imponerle honorarios por temeridad, al ésta nunca implementar el acuerdo manifestado.*

*3. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guayama, al desestimar la demanda de injunction sin celebrar una vista pública para aquilatar la prueba; de igual modo erró al no cumplir con el procedimiento de injunction el cual es uno sumario."*

Por su parte, sostiene la Academia que la estipulación entre las partes y que antes citamos nunca advino a la vida jurídica como transacción porque no recibió formalmente aprobación judicial. Se añade en la apelación que el recurso se está ventilando en dos foros a la misma vez porque los vecinos acudieron a A.R.P.E. el 13 de julio de 2004 para dirimir las mismas controversias que tienen planteadas en el Tribunal. Los errores señalados por la Academia son los siguientes:

*"1. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guayama, al dictar la orden del 1 de diciembre de 2004 a los fines de ordenar al fiel cumplimiento de un acuerdo perfeccionado el 25 de junio de 2004, la cual nunca se materializó al configurarse su condición resolutoria, al no haberse aprobado oportunamente por el tribunal, y al desestimarse la demanda de injunction.*

*2. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guayama, al dictar la orden del 1 de*

*diciembre de 2004 a los fines de ordenar al fiel cumplimiento de un acuerdo perfeccionado el 25 de junio de 2004, cuando al desestimar la demanda injunction bajo la doctrina de jurisdicción primaria perdió su jurisdicción sobre la materia del caso."*

El Municipio ha comparecido ante nos y sostiene que A.R.P.E. es la agencia con *expertise* en materia de construcción y permisos de uso. Señala que no formaron parte del acuerdo presentado al Tribunal, pues el mismo fue pactado entre la Asociación y la Academia. Habiendo comparecido todas las partes, procedemos a resolver.

## II

**La Jurisdicción del Tribunal**

En el presente caso, el Municipio arguye que el Tribunal de Apelaciones carece de jurisdicción al considerar la "*resolución y orden*" del T.P.I. como una sentencia final, puesto que se adjudicó el caso en su totalidad. Sostiene que la Academia solicitó reconsideración parcial de la resolución y que, al haber sido parcial, no interrumpió los términos para apelar la sentencia del T.P.I. No le asiste la razón. Veamos.

La Moción de Reconsideración radicada el 30 de diciembre de 2004 fue acogida por el Tribunal y se pautó una audiencia. La resolución del T.P.I. mediante la cual declaró no ha lugar a la reconsideración se notificó el 3 de mayo de 2005 y el recurso de *certiorari* de la Academia fue radicado el 25 de mayo de 2005. El recurso fue radicado en tiempo.

El T.P.I. celebró vista para discutir la Moción de Reconsideración presentada, se reiteró en su dictamen de 1 de diciembre de 2004 y declaró no ha lugar la reconsideración. De lo anterior surge que el T.P.I. examinó nuevamente la decisión que había emitido y se reafirmó en la misma por lo que los términos fueron interrumpidos y la Asociación acudió ante nos dentro del término jurisdiccional.

La Regla 43.1 establece que el término sentencia incluye cualquier determinación del T.P.I. que resuelva **finalmente** la cuestión litigiosa de la cual pueda apelarse. 32 L.P.R.A. Ap. III, R. 43.1. El Tribunal Supremo de Puerto Rico estableció en *Cárdenas Maxán v. Rodríguez,* 119 D.P.R. 642, 655 (1987):

*"Una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal que no queda pendiente nada más que la ejecución de la sentencia."*

Una sentencia adjudica las controversias de un caso y define los derechos de las partes. *U.S. Fire Ins. v. A.E. E.,* 151 D.P.R. 962, 967 (2000); *Cárdenas Maxán v Rodríguez, supra,* a la pág. 656. Ahora bien, el Tribunal Supremo ha resuelto que si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a la controversia entre las partes, la resolución constituye una sentencia final contra la cual puede interponerse un recurso de apelación. *De Jesús v. Corp. Azucarera de P.R.,* 145 D.P.R. 899, 903-904 (1998); *Bco. Santander P.R. v. Fajardo Farms Corp.,* 141 D.P.R. 237, 244 (1996); *A.F.F. v. Tribunal Superior,* 93 D.P.R. 903, 906 (1967).

La diferencia entre una resolución y una sentencia ha sido establecida por nuestra jurisprudencia. Una resolución pone fin a un incidente dentro del proceso judicial, mientras una sentencia pone fin a la controversia entre las partes mediante una adjudicación final. *Bco. Santander P.R. v. Fajardo Farms Corp. supra,* pág. 245; *Rodríguez v. Tribl. Mpal. y Ramos,* 74 D.P.R. 656, 664 (1953).

Las reglas que gobiernan nuestro procedimiento civil trascienden "*la mística de las palabras*". *Moa v. E.L.A.,* 100 D.P.R. 573, 586 (1972. El nombre con que se "*designa un recurso no es determinante de su naturaleza, ni debe ser decisivo desde el punto de vista de la función de hacer justicia*". *Correa Negrón v. Pueblo,* 104 D.P.R. 286, 293 (1975).

En el presente caso, el T.P.I. tituló la disposición del caso como "*resolución y orden*", pero realmente dispuso de todas las controversias entre las partes vía la desestimación, por lo que la consideramos como una sentencia final.

## III
### La sentencia por estipulación y el contrato de transacción

Una estipulación suscrita por las partes y aceptada por el tribunal, que finaliza un pleito o un incidente dentro del pleito, constituye un contrato de transacción que las obliga. *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61, 74 (1987). Una vez hecha y aprobada por el tribunal una estipulación, obliga a quienes la hacen y a las partes legalmente representadas por ellos. "*La estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella*". *P.R. Glass Corp. v. Tribunal Superior*, 103 D.P.R. 223, 231 (1975). Debe interpretarse liberalmente, en acuerdo con la intención de las partes y con el propósito de hacer justicia.

El Código Civil de Puerto Rico define el contrato de transacción en el Art. 1709, 31 L.P.R.A. sec. 4821, como:

"*La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.*"

El Tribunal Supremo ha establecido que de la definición anterior se desprende que existen dos clases de contratos de transacción: el judicial y el extrajudicial. Si antes de comenzar un pleito en el tribunal, las partes llegan a un acuerdo para eliminar la controversia, el mismo es un contrato de transacción extrajudicial. Estando pendiente un pleito en el tribunal, las partes pueden acordar una transacción sin la intervención del tribunal. El mismo constituiría también una transacción extrajudicial y bastaría un desistimiento. Sin embargo, si la controversia llega a un pleito en el tribunal, y luego de este haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso, estamos ante un contrato de transacción judicial que tiene el efecto de terminar el pleito. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 870-871 (1995).

Existe una gran diferencia en cuanto a la manera de poder llevar a la práctica lo convenido en la transacción, dependiendo de si es judicial o extrajudicial. El acuerdo judicial puede llevarse a efecto por los trámites de ejecución de sentencia, mientras que el extrajudicial se considera un contrato entre las partes y sólo puede hacerse valer cuando se haya declarado su eficacia en el juicio correspondiente. *Neca Mortg. Corp. v. A&W Dev. S.E.*, *supra*, pág. 872.

El contrato de transacción, por su naturaleza, debe interpretarse restrictivamente. *Negrón Rivera y Bonilla, Ex Parte*, *supra*. El Artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826, dispone que la transacción comprende los objetivos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.

Las estipulaciones son favorecidas judicialmente y, como regla general, los jueces deben aprobar los acuerdos a los que lleguen los litigantes, ya sea para finalizar un pleito o un incidente dentro del mismo. Una vez el tribunal aprueba la estipulación, ésta constituye un contrato de transacción que obliga a las partes si están presentes los requisitos esenciales del contrato de transacción, es decir, si existe una relación jurídica incierta y las partes se hacen concesiones recíprocas. *Ramos Rivera v. E.L.A.*, 148 D.P.R. 118, 130 (1999) (SENTENCIA).

El examen de los expedientes ante nuestra consideración nos convence de que las partes presentaron al Tribunal una estipulación que constituyó un acuerdo de transacción judicial. El contenido del acuerdo, presentado el 25 de junio de 2004, se refiere a una medida temporal de cómo dirigir el tránsito vehicular en la entrada y salida de la Academia mientras litigaban formalmente el asunto. Nótese que el Juez se comprometió a

incorporarlo a una resolución, pero, a la misma vez, mantuvo el caso judicial activo. La inacción del T.P.I. provocó que la Academia formalizara una solicitud de desestimación el 4 de agosto siguiente y que los vecinos requirieran al Juez que dictara la sentencia por estipulación el 12 de agosto.

El T.P.I. dictó una resolución el 2 de septiembre de 2004 que evidencia su propósito de celebrar una audiencia para recibir prueba en torno a las controversias alegadas en la petición de *injunction* preliminar. De ésta se desprende que las partes informaron un acuerdo y que el T.P.I. se proponía dictar una resolución que acogiera el mismo. Así lo expresa claramente el Juez en su resolución de 10 de septiembre de 2004.

## IV
## La doctrina de Jurisdicción Primaria

La doctrina de jurisdicción primaria tiene el propósito de determinar dónde debe instarse primeramente una reclamación, cuando tanto una agencia administrativa como el foro judicial poseen jurisdicción concurrente sobre dicha reclamación. *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. ___ (2001), **2002 J.T.S. 4**.

La doctrina de jurisdicción primaria tiene dos vertientes: la exclusiva y la concurrente. La jurisdicción concurrente ocurre cuando la ley permite que la reclamación se inicie en cualquiera de los dos foros: el judicial o el administrativo. En ésta se refiere el asunto al organismo administrativo y el proceso judicial queda suspendido por deferencia a la agencia. *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433, 442 (1992). En la jurisdicción primaria exclusiva, la ley dispone que el organismo será el único que tendrá jurisdicción inicial para examinar la reclamación. Los tribunales son despojados de cualquier jurisdicción original y su función se limita a la revisión judicial. *Colón v. Méndez, Depto. Recursos Naturales, supra.*

La aplicación de la doctrina de jurisdicción primaria no significa que el ejercicio de la jurisdicción del Tribunal ha sido eliminado, sino que ha sido meramente aplazado o pospuesto. *Ortiz v. Panel F.E.I.*, 155 D.P.R. ___ (2001), **2001 J.T.S. 137**.

En *Ortiz v. Panel F.E.I., supra*, el Tribunal Supremo estableció, respecto a la doctrina de jurisdicción primaria, lo siguiente:

*"El fundamento principal de la doctrina es que las agencias se consideran mejor equipadas que los tribunales debido a su especialización y al conocimiento obtenido a través de la experiencia. D. Fernández, op. cit., §8.3, pág. 434; Davis, op. cit. §22:1. Consecuentemente, '[l]a aplicación de la doctrina significa la exclusión de la acción judicial para así obtener los presuntos beneficios que se derivan de la interacción con el ente administrativo especializado'. Id., pág. 434-35. Por tanto, los jueces deben aplicar la misma, como regla general, en casos en los cuales el peritaje de la agencia sea indispensable para resolver la controversia, ya que los 'tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas'." Quiñones v. A.C.A.A.*, 102 D.P.R. 746, 749-50 (1974).

La doctrina de jurisdicción primaria no aplica cuando la naturaleza de la causa de acción presentada y el remedio solicitado inciden en que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de la pericia de la agencia, es decir, cuando la cuestión que se plantea sea *"puramente judicial"*. El dictamen de si existe o no jurisdicción dependerá de la necesidad de la pericia administrativa. *Ortiz v. Panel F.E.I., supra*. A modo de excepción, entre otros, se ha reconocido que en los casos en que se alega una violación a los derechos civiles, se puede obviar el proceso administrativo y acudir en primera instancia al foro judicial mediante el recurso de *injunction. Gracia Ortiz v. Policía de P.R.*, 140 D.P.R. 247, 252 (1996).

La Junta de Planificación fue creada por la Ley 75 de 24 de junio de 1975, según enmendada, con el propósito de guiar el desarrollo integral del país de modo coordinado, adecuado y económico, de acuerdo con las

necesidades sociales, para fomentar la salud, la seguridad, el orden, y el bienestar social en el proceso de desarrollo, en la distribución de población, en el uso de tierras y otros recursos. 23 L.P.R.A. sec. 62c. La Junta de Planificación es la encargada de aprobar reglamentos de zonificación para establecer distritos o zonas, tanto en áreas urbanas como rurales, el uso y desarrollo de terrenos y edificios públicos y privados, para fines como industria, comercio, transporte y residencia, entre otros. 23 L.P.R.A. sec. 62o.

A su vez, la Administración de Reglamentos y Permisos, Ley 76 de 24 de junio de 1975, según enmendada, tiene entre sus deberes aplicar y velar por el cumplimiento de sus reglamentos y los aprobados por la Junta de Planificación para el desarrollo y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza o reglamentación de cualquier organismo que regule la construcción en Puerto Rico. 23 L.P.R.A. sec. 71p.

El T.P.I. concluyó que los foros administrativos junto al Municipio deben considerar, en primera instancia, todo lo relativo a los permisos para operar la Academia. El conocimiento especializado de las agencias en torno al problema de los permisos y del tránsito vehicular nos convence de que es correcta la determinación del T.P.I.

## V
**El estorbo público y la petición de *injunction***

El Artículo 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2761, define lo que es un estorbo público:

*"Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, o que estorbare el bienestar de todo un vecindario, o un gran número de personas, o que ilegalmente obstruyere el libre tránsito, en la forma acostumbrada, por cualquier lago, río, bahía, corriente, canal o cuenca navegable, o por cualquier parque, plaza, calle, carretera pública y otras análogas, constituye un estorbo público que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona, agencia pública o municipio cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicho estorbo público; y la sentencia podrá ordenar que cese aquélla, así como decretar el resarcimiento de los perjuicios; lo aquí provisto no podrá aplicarse a las actividades relacionadas con el culto público practicado por las diferentes religiones. Disponiéndose, que nada de lo aquí dispuesto limitará los poderes de la Junta de Calidad Ambiental para promulgar los reglamentos a que está autorizada por ley. Además, esta legislación no limitará aquellos poderes otorgados por ley y que puedan adoptar los municipios mediante ordenanzas municipales en la implantación de los procesos y procedimientos sobre estorbos públicos en sus correspondientes jurisdicciones."*

El principio de equidad gobierna la concesión o denegación de un *injunction* y exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley. Constituye un daño irreparable aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. Por lo tanto, antes de expedir un *injunction*, ya sea preliminar o permanente, el tribunal debe tomar en consideración la existencia o ausencia de algún otro remedio adecuado en ley que evite la expedición del *injunction*. *Pérez Vda. Muñiz v. Criado, supra*, págs. 372-373.

El *injunction* es un remedio extraordinario que debe concederse cuando no hay otro remedio en ley. En el caso de autos, hay un remedio disponible a la Asociación. Como cuestión de realidad, la Asociación acudió a A. R.P.E. para que examine con su *expertise* la controversia y adjudique la misma.

Los Residentes de la Urbanización El Prado han presentado querella contra la Academia La Milagrosa, el 13 de julio de 2004 y el 11 de febrero de 2005. Ello se desprende de la citación de A.R.P.E. para celebrar las audiencias los días 10 y 11 de octubre de 2005. En el caso de autos, la Asociación sostiene como error que el T.P.

I. desestimara el *injunction* y aplicara la doctrina de jurisdicción primaria. Como hemos dicho, el *injunction* es un recurso extraordinario y si hay otro remedio en ley disponible no se dictará el mismo. En el caso de autos existe otro remedio en ley que ha sido utilizado por la Asociación y que está pendiente de dilucidarse en una audiencia próximamente. La Junta de Planificación y A.R.P.E. tienen el *expertise* para atender y resolver la controversia planteada. El T.P.I. aplicó correctamente la doctrina de jurisdicción primaria y desestimó el caso.

La referida doctrina de jurisdicción primaria cobra vida cuando la agencia y el tribunal tienen jurisdicción para entrar a discutir los meritos del caso. Sin embargo, la experiencia y el conocimiento especializado de la agencia hacen aconsejable que la agencia intervenga primero. El tribunal debe posponer la revisión judicial hasta tanto la agencia aplique su pericia al asunto. Debemos permitir que el trámite administrativo siga su cauce hasta lograr la adjudicación de la controversia.

Actuó correctamente el T.P.I. al desestimar el caso.

## VI

La Academia nos señala que el T.P.I. erró al ordenar que se cumpliera con el acuerdo plasmado en la sentencia de 1 de diciembre de 2004. Se alega que el acuerdo estaba sujeto a una condición resolutoria de que A.R.P.E. le aprobara un permiso de uso a la Academia y que, como se había otorgado el permiso de uso, ya ellos no tenían que cumplir con el acuerdo. De la trascripción que hizo el T.P.I. de la estipulación no se desprende que la misma estuviera sujeta a la aprobación de un permiso de A.R.P.E.

La estipulación aprobada por el T.P.I. fue presentada en corte abierta por las partes como un remedio temporal para aliviar el problema del tránsito vehicular mientras continuaban litigando la controversia. El Tribunal acogió el acuerdo y lo incorporó finalmente en su resolución de 1 de diciembre de 2004, por lo cual constituye un contrato entre las partes y da vida a una transacción judicial que obliga a las partes.

## VII

Por todo lo antes expuesto, consideramos la resolución de 1 de diciembre de 2004 como una sentencia y así modificada la confirmamos en todas sus partes.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones