Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| HUB ADVANCED NETWORK, LLC<br><br>Demandante-Apelante<br><br>Vs.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, EN REPRESENTACIÓN DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES (ASG) Y OTROS<br><br>Demandados-Apelados<br><br>LIBERTY MOBILE PUERTO RICO, INC.<br><br>Parte Interventora | KLAN202400470 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br><br>SJ2023CV11774<br><br>Sala: 904<br><br>SOBRE: INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de julio de 2025.

Comparece la parte apelante, Hub Advanced Network, LLC, y solicita la revisión de la *Sentencia Parcial* emitida el 7 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan, la cual desestimó la petición de *Injunction Preliminar* y de *Mandamus* del epígrafe, y ordenó la transferencia de las restantes causas de acción promovidas por el apelante a la sala ordinaria del tribunal.

Por los fundamentos expuestos en esta sentencia, *confirmamos* la sentencia parcial apelada.

*-I-*

El 21 de octubre de 2022, la Junta de Subastas de la Administración de Servicios Generales (Junta de Subastas) publicó

la Solicitud de Propuestas Selladas Núm. 23J-04568 para servicios de telecomunicaciones a entidades gubernamentales y a municipios del Gobierno de Puerto Rico. El 28 de noviembre de 2022, la Junta de Subastas recibió cuatro propuestas de las siguientes compañías: (1) Data Access Communications, Inc. (Data Access); (2) Worldnet Telecommunications, LLC (Worldnet); (3) PRTC Inc., dba Claro (Claro); y (4) HUB Advanced Network, LLC (apelante). El 17 de abril de 2023, la Junta de Subastas emitió la *Resolución de Adjudicación RFP 23J-04568*. Los licitadores agraciados fueron: (1) Data Access Communications, (2) Worldnet, y (3) Claro. La parte apelante no resultó favorecida. El 5 de mayo de 2023, la parte apelante presentó una *Solicitud de Revisión Administrativa* ante la Junta Revisora de la Administración de Servicios Generales (Junta Revisora). El 23 de mayo de 2023, Liberty Mobile Puerto Rico, Inc. (Liberty) también acudió ante la Junta Revisora y solicitó la anulación de la *Resolución de Adjudicación*. Liberty aseveró no haber recibido una notificación de la adjudicación del requerimiento de propuestas. Además, solicitó una orden a la Junta de Subastas para que evaluara su oferta.

El 20 de junio de 2023, la Junta Revisora emitió una *Resolución* en *Hub Advanced Networks, LLC v. Junta de Subasta de la Administración de Servicios Generales* (Caso Núm. JR-23-128). La Junta Revisora determinó que, carecía de jurisdicción para atender el recurso, y devolvió el caso a la Junta de Subastas para que notificara adecuadamente la resolución. La Junta Revisora no tomó acción sobre la revisión administrativa presentada por Liberty. El 10 de julio de 2023, Liberty acudió al Tribunal de Apelaciones (Caso Núm. KLRA202300348) y solicitó la revisión judicial de la determinación emitida el 20 de junio de 2023 por la Junta Revisora. Planteó que, la Junta de Subastas y la Junta Revisora violentaron sus derechos al no notificarle las determinaciones finales emitidas por ambas. El 12 de julio de 2023 un panel hermano emitió

*Sentencia,* desestimó la revisión judicial instada por Liberty, por falta de jurisdicción, por prematura ante el hecho de que el trámite administrativo no había culminado. El Tribunal de Apelaciones expresó:

> La Resolución aquí impugnada devuelve el asunto al foro de origen para que subsanen deficiencias procesales que privaron a la Junta Revisora de jurisdicción, y en consecuencia, no permite que la determinación sea "final" como requiere la LPAUG.
>
> [...]
>
> Se le apercibe a la Junta de Subastas de la Administración de Servicios Generales de que, en su determinación de adjudicación, incluya cualquier evento procesal relacionado con licitadores que participaron, pero no fueron considerados, y se notifique dicha determinación final a **todos** los licitadores o proponentes, aunque su propuesta no haya sido considerada. Una vez se produzca la decisión final de la Junta de Subastas, la parte aquí recurrente, de no estar conforme, podrá solicitar la revisión de la misma ante la Junta Revisora y, luego, de estimarlo conveniente, ante este Tribunal, sobre la base de los planteamientos que estime pertinentes (incluidos, de ser aplicables, los contenidos en el recurso de referencia).

El 4 de agosto de 2023, la Junta de Subastas emitió una *Resolución de Adjudicación Enmendada* en cumplimiento con el dictamen emitido por la Junta Revisora el 20 de julio de 2023. Inconforme, el 11 de agosto de 2023, Liberty compareció nuevamente ante este tribunal (Caso Núm. KLRA202300419). Argumentó que, la notificación de la Junta de Subastas del 4 de agosto de 2023 fue inadecuada pues no recibió notificación oficial de la resolución final de la agencia. El 12 de septiembre de 2023, el panel de jueces que atendió el recurso emitió *Sentencia,* también desestimó el recurso por falta de jurisdicción, por prematuro. Según la sentencia, la notificación del 4 de agosto de 2023 de la Junta de Subastas también resultó invalida al excluir a Liberty como parte. El caso fue devuelto a la Junta de Subastas con el propósito de subsanar la deficiencia en la notificación de la resolución final.

Pendiente la notificación, el 9 de febrero de 2024 la parte apelante presentó demanda de *injunction* preliminar, sentencia declaratoria sobre nulidad de contratos de terceros, y *mandamus,*

contra de la Administración de Servicios Generales (ASG); Puerto Rico Innovation and Technology Services (PRITS); Departamento de Seguridad Pública; Departamento de la Familia; Oficina de Gerencia y Presupuesto; Administración de Rehabilitación Vocacional; y todos los funcionarios de éstas en su carácter oficial; Karla Mercado Rivera, Administradora de ASG; el Sr. Antonio Ramos Guardiola, Director Interino de PRITS; Sr. Alexis Torres, Secretario del Departamento de Seguridad Pública; Sra. Ciení Rodríguez Troche, Secretaria del Departamento de la Familia; Lcdo. Juan Carlos Blanco Urrutia, Director de la Oficina de Gerencia y Presupuesto; Sonia Hernández Méndez, Directora de Rehabilitación Vocacional; Departamento de Justicia de Puerto Rico, por medio del Secretario de Justicia, Hon. Domingo Emanuelli Hernández; Compañía de Fomento Industrial de Puerto Rico; Oficina del Panel sobre el Fiscal Especial Independiente; Sistema de Retiro de los Empleados del Gobierno Estatal de Puerto Rico y sus instrumentalidades t/c/c Junta de Retiro; Oficina del Gobernador, Comisión de Juegos del Gobierno de Puerto Rico; Oficina del Comisionado de Seguros; Worldnet, Claro, y Data Access.

Aseveró que, el 30 de mayo de 2023, Claro, Data Access y WorldNet firmaron contratos maestros con la ASG, y que, varias agencias firmaron contratos de servicio de telecomunicaciones con estas tres compañías en atención a los contratos maestros suscritos. La parte apelante argumentó que, la adjudicación del requerimiento de propuestas no era final porque la Junta de Subastas no había notificado adecuadamente la adjudicación del requerimiento de propuestas y por ende todos los contratos firmados son nulos. El 22 de febrero de 2024, ASG y PRITS solicitaron la desestimación de la demanda. Argumentaron sobre la falta de jurisdicción del tribunal, y el incumplimiento del apelante con el principio de agotamiento de remedios administrativos. En igual fecha compareció Claro para

oponerse a la expedición del *injunction* y *mandamus* solicitado. El 23 de febrero de 2024, WorldNet también solicitó la desestimación de los recursos, y las otras causas de acción promovidas en la demanda. El Departamento de Justicia compareció en representación del Gobierno de Puerto Rico y de las agencias codemandadas. Solicitó la desestimación de la demanda del apelante. El 26 de febrero de 2024, la Compañía de Fomento Industrial presentó una *Moción para Mostrar Causa y Uniéndose a Mociones de Desestimación*. El 27 de febrero de 2024, la parte apelante presentó oposición a las desestimaciones solicitadas por los codemandados.

El 7 de marzo de 2024, el foro apelado emitió *Sentencia Parcial*, desestimó los recursos extraordinarios de *injunction preliminar* y *mandamus* por falta de jurisdicción sobre la materia y por ausencia de un deber ministerial incumplido. El tribunal refirió el resto de las causas de acción al trámite civil ordinario. El tribunal denegó la *Moción de Reconsideración y Solicitud de Determinación de Hechos y Conclusiones de Derecho Adicionales*, presentada por la parte apelante. Todavía inconforme, la parte apelante comparece antes nosotros y señala los siguientes errores:

> Erró el Honorable TPI al denegar la expedición del *injunction* preliminar.
>
> Erró el honorable TPI al determinar que no posee jurisdicción sobre la materia y que es el Tribunal de Apelaciones quien tiene jurisdicción exclusiva en cuanto a la solicitud de HUB para que se paralicen los procesos de contratación bajo una adjudicación de subasta impugnada, privando a HUB de un remedio adecuado en ley hasta que la Junta de Subastas de ASG decida emitir una nueva resolución de adjudicación.
>
> Erró el honorable TPI al no declarar la nulidad de las contrataciones ante la multiplicidad de violaciones de las partes contratantes a los documentos de la subasta, la ley y la reglamentación aplicable.
>
> Erró el honorable tribunal al no conceder el *mandamus* solicitado.
>
> Las partes apeladas comparecieron mediante alegato escrito.

Examinado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

*-II-*

*-A-*

El auto de *injunction* en Puerto Rico está gobernado por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, y por los Arts. 675-695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3566. La Regla 57 de Procedimiento Civil establece dos modalidades de *injunction*: el *injunction* permanente, el *injunction* preliminar o el entredicho provisional. La autorización de una orden de *injunction* permanente, *injunction* preliminar o entredicho provisional descansa en la sana discreción del tribunal. El *injunction* es dirigido principalmente contra actos por cometerse o se anticipa serán cometidos. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 4ta ed., San Juan, Ed. Lexis Nexis, 2007, pág. 463. Un *injunction* prohíbe u ordena la ejecución de un acto, con el fin de evitar perjuicios inminentes o daños irreparables cuando no existe un remedio adecuado en ley. 11A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d Sec. 2942 (2da ed. 1995). Un recurso extraordinario de *injunction* procede solo cuando alguna acción connota un agravio patente a un derecho del individuo. Véase, *García Ortiz v. Policía de P.R.*, 140 DPR 247 (1996). Un daño irreparable es aquel para el cual no existe compensación mediante los remedios legales disponibles. *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 373 (2000). La parte promovente debe demostrar que sufrirá un daño irreparable del tribunal no librar un mandamiento de *injunction* a su favor. *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 682 (1997).

La expedición de un *injunction* preliminar o *pendente lite*, depende de los siguientes criterios: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse

el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el remedio, (5) y el posible impacto sobre el interés público. *Rullán v. Fas Alzamora,* 166 DPR 742, 764, (2006); *Mun. de Loíza v. Sucn. Suárez et al.,* 154 DPR 333, 367 (2001); P.R. *Telephone Co. v. Tribunal Superior,* 103 DPR 200, 202 (1975). Aunque el cuarto criterio es el más importante, es concomitante con el segundo criterio: la irreparabilidad de los daños o la existencia de un remedio adecuado en ley. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 41 (2010). La decisión para conceder o denegar la orden no será revocada en apelación salvo abuso de discreción. *E.L.A. v. Asoc. de Auditores,* 147 DPR 669, 680 (1999); *Delgado v. Cruz,* 27 DPR 877, 880 (1919).

### -*B*-

El *mandamus* es un recurso altamente privilegiado y discrecional que procede "para exigir el cumplimiento de un deber impuesto por la ley; es decir, de un deber calificado de "ministerial". *AMPR v. Srio. Educación,* E.L.A., 178 DPR 253, 263 (2010). Un deber ministerial es "un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado". *Íd.,* pág. 264. Si el acto "depende de la discreción o juicio del funcionario, tal deber se considera como no ministerial". *Íd.* Salvo contadas excepciones, el recurso de *mandamus* requiere a la parte peticionaria demostrar un requerimiento previo ignorado o indebidamente atendido por el demandado. *Noriega v. Hernández Colón,* 135 DPR 406, 448 (1994). No procede expedir un recurso de *mandamus* cuando la parte peticionaria tiene un recurso legal disponible en el curso ordinario de la ley. Artículo 651, Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Compete al tribunal

determinar si el deber ministerial surge o no de la ley aplicable. *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 418 (1982). Tal determinación "tiene que surgir del examen y análisis de todos los elementos útiles a la función interpretativa". *AMPR v. Srio. Educación*, E.L.A., *supra*, pág. 264.

**-C-**

La Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, Ley 73-2019, 3 LPRA sec. 9831 *et seq.*, establece como política pública del Gobierno de Puerto Rico la centralización de los procesos de compras gubernamentales bienes, obras y servicios. Esto último con el fin de lograr mayores ahorros fiscales y la transparencia en la gestión gubernamental. En armonía con lo anterior, se delegó en la Administración de Servicios Generales la responsabilidad de implantar la política pública, dirigir el proceso de adquisición de bienes y servicios, y la contratación de servicios del Gobierno de Puerto Rico, entre otros. Artículo 10, Ley Núm. 73-2019, 3 LPRA sec. 9832e.

La Ley Núm. 73-2019 creó la Junta de Subastas, adscrita a la Administración de Servicios Generales, de naturaleza cuasijudicial, con la facultad de evaluar y adjudicar las subastas del Gobierno de Puerto Rico. Artículo 47, Ley Núm. 73-2019, 3 LPRA sec. 9836. La Junta de Subastas está facultada para emitir invitaciones de subastas y solicitudes de propuestas selladas, evaluar y adjudicar las propuestas y/o subastas, no aceptar licitaciones que contengan precios en exceso del precio de venta al detal sugerido por el manufacturero, entre otros. La Ley Núm. 73-2019 también creó la Junta Revisora de Subastas, adscrita a la Administración de Servicios Generales, de naturaleza cuasijudicial, facultada para revisar cualquier objeción a la adjudicación final de la Junta de Subastas. Artículo 55, Ley Núm. 73-2019, 3 LPRA sec. 9837.

El Artículo 68 de la Ley Núm. 73-2019, 3 LPRA sec. 9838e, dispone que, la parte adversamente afectada por una determinación final de la Junta Revisora podrá recurrir al Tribunal de Apelaciones mediante un recurso de revisión judicial conforme a la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, (LPAU), Ley 38-2017, 3 LPRA 9601 *et seq*. El Artículo 4.2 de la LPAU, 3 LPRA sec. 9672, dispone:

> En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, de la Junta Revisora de Subastas de la Administración de Servicios Generales, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones dentro de un término de veinte (20) días, contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia, la referida Junta Revisora de Subastas de la Administración de Servicios Generales o la entidad apelativa, o dentro del término aplicable de veinte (20) días calendario de haber transcurrido el plazo dispuesto por la Sección 3.19 de esta Ley.

### -D-

El gobierno utiliza el requerimiento de propuestas (RFP) como mecanismo de adquisición de bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019); *Trans Ad de PR v. Junta de Subastas*, 174 DPR 56, 66 (2008); *Marina v. Comisión*, 170 DPR 847, 854 (2007). El RFP "se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios". *PR Eco Park et al. v. Mun. de Yauco, supra*, págs. 531-532; R & B Power v. E.L.A., 170 DPR 606, 621 (2007).

El "derecho a cuestionar [cierta] adjudicación de una subasta mediante el proceso de revisión judicial es parte del debido proceso de ley". *PVH Motor v. ASG*, 209 DPR 122, 132 (2022). Para ejercer tal derecho, es indispensable notificar adecuadamente a todas las partes la adjudicación final del asunto. *PVH Motor v. ASG, supra*, pág. 132; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 35

(2000). En específico, "se debe advertir del derecho de las partes a procurar la revisión judicial; el término disponible para hacerlo y la fecha del archivo en autos de una copia de la notificación". *PVH Motor v. ASG, supra*, pág. 132. Una notificación defectuosa impide el comienzo del término para recurrir de una determinación administrativa. *PVH Motor v. ASG*, supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco, supra*, pág. 538; *Toro Alvarado v. Madera Atiles*, 202 DPR 495, 502 (2019).

La LPAU, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*, "codifica las pautas mínimas que deben garantizar las agencias administrativas cobijadas por ese estatuto". *ACT v. PROSOL et als.*, 210 DPR 897, 907 (2022); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016). La sección 3.19 de la LPAU, 3 LPRA sec. 9659, establece el procedimiento para solicitar la revisión administrativa de la adjudicación de un RFP:

> La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días calendario de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días calendario que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días calendario.

El cuarto párrafo de la Sección 3.19 de LPAU permite la revisión judicial de la adjudicación final del RFP:

> La parte adversamente afectada tendrá un término jurisdiccional de veinte (20) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora

de Subastas de la Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa.

La sección establece que, "[l]a presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones". *Íd.*

### -III-

### -A-

El *mandamus* solo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir ese remedio. *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 455 (2006). La parte apelante afirma que, el presente procedimiento de compras gubernamentales quedó paralizado de forma automática ante la presentación de la revisión administrativa ante la Junta Revisora. En específico asevera que:

> El procedimiento administrativo de la Administración de Servicios Generales (ASG) para los procesos de subasta dispone que se paraliza el proceso de adjudicación hasta que no se emita una adjudicación final y que no pueda otorgarse contrato alguno bajo la subasta hasta que se emita una adjudicación final no impugnada.

Sobre estas premisas concluye que, los contratos maestros firmados por la ASG con los licitadores agraciados son nulos, y los firmados por estos con las entidades gubernamentales también son nulos.

El Artículo 63 de la Ley Núm. 73-2019 dispone que, los procedimientos de adjudicación ante la Junta de Subastas y de revisión ante la Junta Revisora "se regirán por los procedimientos establecidos en esta Ley y por cualquier disposición de la Ley 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". Artículo 63,

Ley Núm. 73-2019, 3 LPRA sec. 9838. El Artículo 47 de la Ley Núm. 73-2019, 3 LPRA sec. 9836, facultó a la Junta de Subastas a "evaluar y adjudicar, mediante un procedimiento uniforme, las subastas del Gobierno de Puerto Rico que se realicen en cumplimiento con las disposiciones de esta Ley". La Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9654, dispone un plazo de 90 días para que la Junta de Subastas emita la resolución final, a menos que el término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. El Artículo 64 de la Ley Núm. 73-2019, 3 LPRA sec. 9838a, permite a una parte adversamente afectada solicitar una revisión administrativa dentro del plazo de 10 días a partir de la notificación de la determinación final de la Junta de Subastas. A partir del momento de la presentación de la revisión administrativa, la Junta Revisora cuenta con 10 días calendario para decidir si acoge la revisión. Una vez acogida, la Junta Revisora cuenta con 30 días calendario para adjudicarla, término sujeto a una prórroga de 15 días. Artículo 66, Ley Núm. 73-2019, 3 LPRA sec. 9838c. La Ley Núm. 73-2019 es clara y específica, permite la revisión administrativa de la adjudicación final de la Junta de Subastas. Una vez la Junta de Revisión adjudica la revisión administrativa promovida por la parte afectada, esta tiene la alternativa de presentar una revisión judicial ante el Tribunal de Apelaciones. Artículo 68, Ley Núm. 73-2019; Sección 4.2, LPAU, 3 LPRA sec. 9672.

De la letra de la ley no surge la paralización automática insinuada por el apelante al procedimiento adjudicativo bajo estudio. La única instancia en la cual la Ley Núm. 73-2019 menciona algún tipo de paralización es para facultar a la Junta Revisora a emitir una orden de paralización sobre los procedimientos administrativos *post* adjudicación final *motu proprio*

o a petición de parte, cuanto estime necesaria tal acción. Artículo 59 (f), Ley Núm. 73-2019, 3 LPRA sec. 9837d(f).[1] No surge tal petición del expediente del caso. Tampoco surge del expediente, la causa de nulidad atribuida a todos los contratos otorgados por la ASG con los licitadores agraciados, y los contratos suscritos por los licitadores con las distintas entidades gubernamentales.

A "los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de contratos". *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009). El contrato gubernamental que no cumpla con las disposiciones aplicables del Código Civil y, además, con las leyes que imponen controles fiscales y requisitos adicionales a la contratación será nulo e inexistente. *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448, 466-467 (2014). Dos de las leyes especiales que inciden sobre la contratación gubernamental son: la Ley Núm. 230 del 23 de julio de 1974, según enmendada, 3 LPRA sec. 283 *et seq.*, conocida como la *Ley de Contabilidad del Gobierno* (Ley de Contabilidad), y la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 LPRA secs. 97 y 98 (Ley de Registro). La Ley de Contabilidad requiere que los contratos gubernamentales consten previamente por escrito[2] y, la Ley de

---

[1] "[E]mitir cualquier orden, requerimiento, revocación, orden en auxilio de jurisdicción o en paralización de los procedimientos, orden de cese y desista, o resolución que en derecho proceda en los casos ante su consideración y que evite que sus dictámenes sean académicos. Toda resolución emitida en virtud de una adjudicación deberá contener determinaciones de hechos y conclusiones de derecho;".

[2] El Tribunal Supremo ha descansado en las siguientes disposiciones de la Ley de Contabilidad: (i) definición de una obligación como "un compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible", 3 LPRA sec. 283b(k); (ii) "todas las asignaciones y los fondos autorizados para las atenciones de un año económico, serán aplicados exclusivamente al pago de los gastos legítimamente incurridos durante el respectivo año o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros", 3 LPRA sec. 283g(a); y (iii) exigencia de que se contabilicen las obligaciones y efectúen los desembolsos únicamente "a través de documentos que sometan las dependencias, los cuales serán previamente aprobados para obligación o pago" por el funcionario autorizado o jefe de la dependencia, 3 LPRA sec. 283h (a). Véase, por ejemplo, *Rodríguez Ramos et al. v. ELA et al.*, *supra*, pág. 457.

Registro supone que el contrato conste por escrito y sea prospectivo.[3] Para que un "contrato otorgado por el Estado y una parte privada sea válido y exigible, este debe constar por escrito previo a las prestaciones correspondientes", es decir, que un "contrato gubernamental [debe] const[ar] por escrito y se[r] prospectivo". *Rodríguez Ramos et al. v. ELA et al.*, *supra*, págs. 458 y 461; *JAAP Corp. v. Depto. Estado et al.*, 187 DPR 730, 747 (2013).

Las alegaciones del apelante apuntan a otro grupo de hechos los cuales se alejan de la norma reseñada. Esto es, la parte apelante no alegó ninguna de las causas de nulidad reconocidas en nuestro ordenamiento jurídico sobre los contratos gubernamentales cuya legalidad ahora cuestiona. Mas bien, vistas las consideraciones legales implicadas en este asunto, estamos forzados a concluir que, el procedimiento administrativo ante la Junta de Subastas, aunque inconcluso no está paralizado. Igualmente, estamos forzados a concluir que, todos los contratos otorgados bajo el requerimiento de propuestas del epígrafe se presumen válidos. Por último, y como vimos, la parte apelante todavía tiene disponible varios remedios legales para cuestionar la decisión de la Junta de Subastas. Empero, sus propias actuaciones han impedido el curso normal del procedimiento de revisión administrativa ante la ASG, y también impide el comienzo del término jurisdiccional para presentar una revisión judicial.

En el presente caso, la ley prescribe y define el deber ministerial tanto de la Junta de Subastas como de la Junta Revisora

---

[3] El Tribunal Supremo ha descansado en las siguientes disposiciones de la Ley de Registro: (i) las "entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor ..", 2 LPRA sec. 97(a); y (ii)"toda entidad gubernamental pagará únicamente por servicios rendidos, así como las partes contratantes siempre se obligarán al cumplimiento de sus prestaciones en fecha futura. [. . .]. Cualquier violación a lo dispuesto en este inciso provocará la nulidad del contrato otorgado.", 2 LPRA sec. 97(d). Véase, por ejemplo, *Rodríguez Ramos et al. v. ELA et al.*, *supra*, págs. 461-463.

con extrema precisión y certeza. No deja espacio en la letra del estatuto para que pueda interpretarse otra cosa que no sea que, tanto la Junta de Subastas, como la Junta Revisora no cuentan con discreción ante el llamado del legislador al cumplimiento de su función adjudicativa. Sin embargo, como dijimos, la propia parte apelante impide a estas entidades gubernamentales cumplir con su deber ministerial en detrimento propio. En fin, la parte apelante no logró demostrar la existencia de un deber ministerial incumplido. *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 269 (2010). No erró el foro primario al desestimar el recurso de *mandamus* presentado por la parte apelante.

### -B-

La petición de *injunction* de la parte apelante descansa sobre la premisa errada de catalogar como ilegales las actuaciones de la ASG, y licitadores agraciados al suscribir y otorgar contratos sobre el fundamento de la *buena pro* otorgada por la Junta de Subastas. El argumento queda resumido en las siguientes oraciones del alegato del apelante:

> En este caso, la Junta de Subastas no ha emitido una nueva resolución de adjudicación y ausente la misma, HUB no puede ir ante la Junta Revisora de Subastas para impugnar lo que no se ha emitido. Solo en el caso, en que la Junta Revisora deniegue la impugnación de HUB, es que HUB podría acudir al Tribunal Apelativo. Esto ocasiona que HUB se encuentre en un limbo jurídico, en una tierra de nadie, donde la ASG y las demás agencias siguen otorgando contratos ultra vires basados en una subasta que nunca ha advenido final y firme, dentro del proceso administrativo de subastas de adquisición de equipos, materiales y servicios, pues la Junta de Subastas de la ASG se niega a emitir una nueva notificación de adjudicación que permita continuar el proceso administrativo de impugnación.

El "limbo jurídico" aducido por el apelante es debido a sus propias acciones. Una determinación final se caracteriza por lo siguiente: (1) la actuación de la agencia representa la culminación de su proceso decisorio, y (2) la actuación administrativa determina todos los derechos y las obligaciones de las partes o surgen de las consecuencias legales de la decisión. *Depto. Educ. v. Sindicato*

*Puertorriqueño*, 168 DPR 527, 544-545 (2006). Es decir, "[p]ara interponer el recurso, la decisión administrativa tiene que ser final y además debe ser revisable. La decisión administrativa es final cuando ha decidido todas las controversias y no deja pendiente ninguna para ser decidida en el futuro. Es revisable cuando la parte afectada por ella haya cumplido con todos los requisitos y haya agotado todos los remedios administrativos disponibles". *Tosado v. A.E.E.*, 165 DPR 377, 384–385 (2005). Por medio de sus actuaciones ante el Tribunal General de Justicia, la parte apelante impide la resolución final que tanto desea. Por un lado, busca la revisión administrativa de la decisión de la Junta de Subastas, pero al mismo tiempo impide la notificación de la resolución final de título. Comparece ante el foro judicial y pretende que usurpemos los prerrogativas y facultades conferidas por el legislador a la Junta de Subastas y a la Junta Revisora. Es norma, a nadie es lícito ir contra los propios actos. La conducta contradictoria como la demostrada por la parte apelante no tiene lugar en el campo del Derecho, y debe ser impedida. *Int'l Gen. Elec. v. Concrete Builders*, 104 DPR 871, 877, (1976). De forma análoga hacemos nuestras las palabras de la tratadista Ana Díaz Martínez en su obra *Propiedad Horizontal*, Editorial Aranzadi, Pamplona 1996, pág. 387, n. 79, que nos remite a la definición del Tribunal Supremo español de la conducta contradictoria en el ámbito de la horizontalidad:

> [E]jercicio antisocial de los derechos, en los que la arbitrariedad y el actuar doloso mueven el hacer en beneficio de los egoísmos desmesurados de unos, perjudicando sin razón, motivo o causa justificativa o susceptible de justificación, los derechos de los demás que resultan afectados por estas conductas, siempre censurables y que rompen la armonía de la vida en colectividad.

La parte apelante también debió demostrar que, de no concederse el *injunction* solicitado antes de la notificación de la resolución final del requerimiento de propuestas, sufriría un daño irreparable. 11A Wright, Miller and Kane, Federal Practice and

Procedure: Civil 2d Sec. 2948.1 (1995). El daño irreparable es aquél que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley. *Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 682 (1997). El concepto de evitación de daños irreparables constituye un aspecto de la regla básica de que procede un *injunction* cuando un remedio no existente en el curso ordinario de la ley. *Municipio de Loíza v. Sucns. de Suarez et al.*, 154 DPR 333, 367 (2001); *Cruz v. Ortiz*, 74 DPR 321, 328 (1953).

La parte apelante no demostró que, la no concesión del remedio extraordinario solicitado le ocasione un daño irreparable o que no exista un remedio adecuado en ley. A contrario sensu, la Ley Núm. 73-2019 otorga autoridad a la Junta Revisora para conceder el remedio que solicitó ante el Tribunal de Primera Instancia. Una vez agotado el trámite administrativo, tanto la Ley Núm. 73-2019 como la LPAU permiten al apelante solicitar la revisión judicial de la decisión final de la Junta Revisora. Inclusive, de quedar probada alguna ilegalidad sobre cualquier compra o venta, la ASG está facultada para recobrar los fondos invertidos:

> Será nula cualquier compra o venta efectuada en contravención de las disposiciones de esta Ley y los reglamentos aprobados de conformidad con la misma. De haberse invertido fondos públicos, éstos podrán recobrarse mediante acción civil correspondiente del Gobierno de Puerto Rico y cualquiera de sus agencias.
>
> De encontrarse responsable a algún servidor público de haber invertido fondos públicos en contravención de esta Ley, éste responderá con su propio peculio. Asimismo, será nula cualquier compra o venta efectuada en contravención del Artículo 24(e) de la Ley 2-2018, conocida como "Código Anticorrupción para el Nuevo Puerto Rico", entre otras disposiciones legales aplicables.
>
> Artículo 39, 3 LPRA sec. 9834o.

Por lo tanto, no cabe duda de que, la Ley Núm. 73-2019 provee un remedio completo a la parte que no esté de acuerdo con la resolución final de la Junta de Subastas o de la Junta Revisora. De ahí que, el daño que pueda sufrir una parte, o el propio Gobierno,

debido a la revocación de una resolución final de la Junta Revisora por el Tribunal de Apelaciones es reparable. Por ello, no creemos que la naturaleza del daño en este caso amerite la concesión del *injunction* promovido. A lo sumo, se trata de un daño de naturaleza monetaria que, puede recuperarse a través del remedio disponible por la Ley Núm. 73-2019 e inclusive por los dispuestos en el Código Civil de Puerto Rico y leyes especiales. Véase, Artículo 5.2 del Código Anticorrupción de Puerto Rico, 3 LPRA sec. 1885a.[4]

Por último, debemos recordar que, los procedimientos de compras gubernamentales tienen el objetivo de establecer un esquema que asegure la competencia equitativa entre los licitadores, evite la corrupción y minimice los riesgos de incumplimiento. *RBR Const., S.E. v. A.C.*, 149 DPR 836, 848–849 (1999); *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 DPR 864, 871 (1990); *Justiniano v. E.L.A.*, 100 DPR 334, 338 (1971). Es el interés público, y no el privado, el que debe prevalecer en este tipo de procedimiento.

En armonía con lo expuesto, entendemos que, en el caso de autos no procede la imposición de un *injunction* preliminar o permanente para impedir la firma de contratos maestros de servicios de telecomunicaciones entre la ASG y los licitadores agraciados o entre los licitadores agraciados y las entidades gubernamentales que buscan sus servicios. No cabe duda de que, la decisión del Tribunal de Primera Instancia descansó esencialmente en su interpretación literal de las leyes antes discutidas.

En atención a todas estas premisas, consideramos que, no erró el foro primario al desestimar la petición de entredicho promovida por la parte apelante.

---

[4] "Se dispone que el Gobierno de Puerto Rico, a través del Secretario de Justicia, podrá presentar acciones civiles ante el Tribunal de Primera Instancia de Puerto Rico contra toda persona natural o jurídica que haya incurrido en acciones u omisiones negligentes, culposas o ilícitas en menoscabo del erario, con el fin de reclamar que se le adjudique una indemnización monetaria equivalente al triple del daño económico ocasionado al erario mediante dicha conducta".

## -IV-

Por los fundamentos previamente expuestos, *confirmamos* la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones