César Gracia Ortiz, demandante y recurrido, *v.* Policía de Puerto Rico, Hon. Pedro Toledo Dávila y otros, demandados y recurrentes.

*Número:* CE-95-37          *Resuelto:* 11 de marzo de 1996

*Pedro A. Delgado Hernández, Procurador General,* abogado del recurrente; *Julio Irving Rodríguez Torres,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

César Gracia Ortiz, Teniente Coronel de la Policía de Puerto Rico, fue notificado el 16 de febrero de 1994 mediante una carta del Superintendente de la Policía, Lcdo. Pedro Toledo Dávila, que había sido reasignado de Aguadilla a Mayagüez. Ejercería las funciones de Oficial Inspector de las Áreas de Aguadilla y Mayagüez adscrito a la Superintendencia Auxiliar en Inspección y Asuntos Disciplinarios. Para sustituirlo en Aguadilla fue nombrado el Comandante Víctor Morales Echevarría, un oficial de menor rango.

En Mayagüez las condiciones de trabajo de Gracia Ortiz empeoraron. Según su testimonio "no [le] dieron oficina, no [le] dieron escritorio, no tenía silla donde sentar[se], el carro, tuv[o] que dejarlo en Aguadilla, y [le] asignaron un carro confiscado". T.E., pág. 17. Tampoco le asignaron una secretaria, aunque él era el oficial de más rango en la Comandancia de Mayagüez. T.E., págs. 18–19. Aun así, no le comunicó la situación a su supervisor inmediato, Coronel José R. Zapata Rivera, Superintendente Auxiliar en Inspección y Asuntos Disciplinarios. T.E., pág. 75.

Sin embargo, Gracia Ortiz le envió una carta al Superintendente en la cual le expresaba la condición precaria de trabajo en la Comandancia de Mayagüez.([1]) Nunca recibió una contestación. T.E., págs. 25–27.

---

([1]) Por miedo a que se extraviara la carta, "opt[ó] por llevarla a la mano, y utiliz[ó] en el Cuartel General ... una Secretaria de Operaciones de Campo que se llama, María de los Angeles, para que le llevara la carta a la mano a la Secretaria del Superintendente y el único resultado que recibi[ó] fue que la trasladaron a ella también, por hacerme ese favor, y ella está disponible para venir". T.E., pág. 26. María de los Ángeles *no* fue presentada como testigo.

El 8 de agosto de 1994 Toledo Dávila envió un memorando al Coronel Zapata Rivera para notificar el traslado de Gracia Ortiz de Mayagüez al Cuartel General en Hato Rey. Sería efectivo el 16 de agosto del mismo año y ocuparía una plaza auxiliar en la Superintendencia Auxiliar dirigida por Zapata Rivera.

En esa nueva plaza, Gracia Ortiz "sería la segunda persona en mando en la Superintendencia" Auxiliar en Inspección y Asuntos Disciplinarios. Su responsabilidad cubriría "toda la Policía de Puerto Rico, ... toda la Isla", no un área geográfica limitada. T.E., págs. 216–217.

Gracia Ortiz nunca se presentó a su nueva plaza. El 30 de agosto de 1994 presentó en el Tribunal Superior, Sala de Mayagüez, una demanda en la que solicitó una sentencia declaratoria, *injunction* y daños y perjuicios. Alegó que su traslado del 8 de agosto era nulo e ilegal por ser una medida represiva y de carácter discriminatorio a causa de su afiliación política al Partido Popular Democrático (en adelante P.P.D.).([2])

Sostuvo, además, que sufriría daños irreparables. En síntesis alegó daños a su estado de salud; a la tranquilidad de su familia, y que la distancia entre su residencia (Hormigueros) y San Juan implicaba gastos económicos adicionales.([3])

La vista de *injunction* se celebró los días 10 de octubre y 21 de noviembre de 1994. Presentada la prueba documental y testimonial,([4]) el tribunal de instancia (Hon. Juan Camacho Fabré, Juez) emitió una Resolución y orden de in-

---

([2]) Invocó la Sec. 1 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 256.

"La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. *No podrá establecerse discrimen alguno por motivo* de raza, color, sexo, nacimiento, origen o condición social, ni *ideas políticas* o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana." (Énfasis suplido.)

([3]) En la vista de *injunction* atestó que aproximadamente gastaría $3.80 diarios en peaje y $14 diarios en gasolina. T.E., pág. 51.

([4]) Testificaron el Teniente Coronel César Gracia Ortiz y su esposa la Sra. Naida Galiano; por los demandados el Coronel José R. Zapata Rivera.

terdicto preliminar el 13 de diciembre. En esencia sostuvo que no se cumplió con las normas de traslado del Reglamento de la Policía; que el traslado conlleva largas y onerosas distancias entre el lugar de residencia de Gracia Ortiz y San Juan; que se causarían daños económicos a la familia y a la salud de Gracia Ortiz, y que el traslado fue motivado por la afiliación política de Gracia Ortiz y no a exigencias del servicio. Contra esta resolución acudieron ante nos los demandados recurrentes.[5]

Habiendo comparecido el recurrido Gracia Ortiz por la vía de mostración de causa y con el beneficio de un análisis de la transcripción de evidencia, resolvemos.

## II

La doctrina de jurisdicción primaria es de génesis jurisprudencial. *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988). "[N]o tiene que ver con el momento o la ocasión de la revisión judicial de la acción administrativa. Se trata de quién posee la facultad inicial de adjudicar y entender en el asunto. Es decir si la acción debe ser presentada ante la agencia o ante el tribunal en primera instancia." D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Ed. Forum, 1993, págs. 423–424. En consecuencia, "ocurre tan solo cuando existe *jurisdicción concurrente* entre el proceso administrativo y el sistema judicial". (Énfasis suplido.) *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398, 402 (1980). Véanse: *Delgado Rodríguez v. Nazario de Ferrer, supra*; *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 432 (1983). "[O]pera para deter-

___

[5] Alegan que:
"ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DICTAR UNA ORDEN DE INTERDICTO PRELIMINAR SIN QUE EL DEMANDANTE HAYA DEMOSTRADO QUE SE CUMPLE CON LOS REQUISITOS ESTABLECIDOS PARA ELLO, Y SIN QUE SE HUBIESE ACUDIDO PREVIAMENTE ANTE J.A.S.A.P., QUE TIENE JURISDICCIÓN PRIMARIA." Petición de *certiorari*, pág. 5.

minar qué organismo, si el judicial o el administrativo, debe hacer la determinación inicial del asunto ...." *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506, 511 (1964). Véase *First Fed. Savs. v. Asoc. de Condómines*, supra, pág. 432. Como norma general, "[a] su amparo, el foro judicial se abstiene para permitir al organismo enjuiciar una materia de su competencia, bajo el supuesto de que éste posee unas destrezas y conocimientos especializados (*expertise*)". *Delgado Rodríguez v. Nazario de Ferrer*, supra, pág. 354.

■ Hemos reconocido, a modo de excepción, que en casos en que se alega una violación de derechos civiles se puede obviar el proceso administrativo y acudir en primera instancia al foro judicial mediante el recurso de *injunction*. *Delgado Rodríguez v. Nazario de Ferrer*, supra; *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977). Sin embargo, no es suficiente una alegación general de discrimen político para marginar automáticamente el proceso administrativo. El planteamiento debe ser claro y específico en cuanto a lo que constituye esa violación.

Una vez se determina que el caso presenta una alegación constitucional clara y específica, uno de los remedios que puede solicitar el promovente es un *injunction*. *Delgado Rodríguez v. Nazario de Ferrer*, supra; *Pedraza Rivera v. Collazo Collazo*, supra. Y, al respecto, hemos reconocido que el *injunction* se ha convertido en el instrumento más eficaz para vindicar los diversos derechos fundamentales protegidos por nuestra Constitución. *Noriega v. Gobernador*, 122 D.P.R. 650, 681 (1988). Es "independiente y suplementario a cualquier otro [remedio] disponible a la parte agraviada". *Pedraza Rivera v. Collazo Collazo*, supra, pág. 276.

■ Como recurso legal extraordinario, sólo puede "utilizarse cuando el procedimiento ordinario no provea un remedio rápido, adecuado y eficaz, para corrección de un

agravio de patente intensidad al derecho del individuo que reclame urgente reparación". *Otero Martínez v. Gobernador*, supra, pág. 556. Para determinar si procede el *injunction* hay que detectar "si la acción envuelve o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación". *First Fed. Savs. v. Asoc. de Condómines*, supra, pág. 438. Más aún, "[e]l tribunal deberá balancear los intereses involucrados y convencerse de que efectivamente existe una posibilidad real de prevalecer". *Delgado Rodríguez v. Nazario de Ferrer*, supra, pág. 357.

## III

Según esta doctrina jurisprudencial, el tribunal de instancia tenía jurisdicción para atender el asunto del traslado, concurrente con la de la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.).[6] Aunque, siguiendo la mejor práctica debió abstenerse de ejercitarla y referirla a J.A.S.A.P., optó por emitir el interdicto preliminar.

Cónsono con los criterios que gobiernan la procedencia de un interdicto preliminar, concluimos que incidió.

Según lo expuesto, en la vista de *injunction* se presentó prueba documental y testimonial. En consecuencia, tenemos el beneficio de evaluar no sólo las alegaciones de Gracia Ortiz, sino la prueba desfilada.

Gracia Ortiz adujo, y el tribunal de instancia consignó, que es un conocido miembro del P.P.D. Sin embargo, no surge de la transcripción prueba alguna que demuestre

---

[6] La Sec. 7.14 de la Ley de Personal del Servicio Público de Puerto Rico dispone que se verán en primera instancia por la Junta de Apelaciones del Sistema de Administración de Personal aquellos casos en que se "alegue que una acción o decisión que le afecta [a un empleado de carrera] viola cualquier derecho que se le conceda a virtud de las disposiciones de este Capítulo, del reglamento que se apruebe para instrumentar este Capítulo, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a este Capítulo". 3 L.P.R.A. sec. 1394.

La Policía de Puerto Rico es un "Administrador Individual". 3 L.P.R.A. sec. 1343. Véase *Torres Arzola v. Policía de P.R.*, 117 D.P.R. 204, 210 (1986).

que el Superintendente Toledo Dávila o alguno de sus superiores inmediatos tuviera conocimiento de su afiliación política, previo al traslado que impugna. El propio Gracia Ortiz atestó que "nunca me he identificado como un político, porque yo soy policía primero". T.E., pág. 54. Más aún, su supervisor, el Coronel Zapata Rivera, testificó que no conocía "la afiliación política del demandante". T.E., pág. 225.

La prueba revela que Gracia Ortiz fue evaluado en su desempeño como policía en varias ocasiones, incluso por el Coronel Zapata Rivera, luego de las elecciones generales de 1992. Le "dieron el máximo en todos los aspectos, cinco en todos los aspectos". T.E., pág. 58. Esta evaluación, como un oficial excelente por aquellos a quienes él le imputa discrimen político, es un fuerte indicador que tiende a desvirtuar su reclamo de discrimen.

También Gracia Ortiz sostuvo, y el tribunal a quo acogió, que el traslado le causaría un daño económico consistente en gastos adicionales de gasolina y peaje. Además, expuso que "con este traslado automáticamente el señor Superintendente me quita un diferencial que me estaba dando". T.E., pág. 53. Sin embargo, la prueba demostró que Gracia Ortiz nunca se comunicó con el Coronel Zapata Rivera para conocer las responsabilidades y los beneficios de la plaza que ocuparía en el Cuartel General en Hato Rey. T.E., pág. 223. De haberlo hecho se hubiera percatado que incluía transportación, un diferencial y una libreta para pagar el peaje. T.E., págs. 216–223. En este extremo, la conclusión de daño económico del ilustrado tribunal de instancia fue errónea.

Dicho foro dictaminó además, a base del testimonio del Coronel Zapata Rivera, que no se cumplió con el Reglamento de la Policía al trasladar a Gracia Ortiz, pues Zapata Rivera "advino a conocimiento del traslado cuando recibió el Memorándum de traslado, ya que a él nunca se le consultó". Ahora bien, Zapata Rivera dijo también que

quien decide generalmente el traslado "de los oficiales —[Teniente Segundo, Teniente Primero, Capitán, Comandante, *Teniente Coronel* y Coronel]— es el señor Superintendente". T.E., pág. 209. Gracia Ortiz es Teniente Coronel; el Superintendente Toledo Dávila no tenía que consultar su traslado con Zapata Rivera.

Alegó Gracia Ortiz y presentó prueba a los efectos, que el traslado le ocasionaría daños en su relación familiar y su estado de salud. El tribunal así lo determinó al concluir que ello requeriría "alejarse de la familia y dejarlos desprovistos del único vehículo existente para trasladar los hijos a la escuela y realizar todas aquellas cosas propias del hogar". Anejo I, pág. 4. Más aún, sostuvo que no se tomó "en consideración, lo que el propio médico de la Policía, Dr. Luis Quiñones, había recomendado de que se le proveyera [a Gracia Ortiz] de un vehículo oficial adecuado [a su] estado de salud". Íd., pág. 6. Según indicamos anteriormente, la prueba demostró que en su nueva plaza se le asignaría un automóvil oficial Mercury, modelo Grand Marquis de 1993, adecuado a su estado de salud. T.E., pág. 218. Ello derrota su contención de que el traslado causaría el problema de tener que dejar a su familia desprovista de su único vehículo privado.

█ De ordinario, los problemas familiares y de salud, que serían producto de un traslado, no son oponibles per se ni es freno limitativo a la autoridad nominadora; máxime en la Policía que, al igual que otras agencias e instrumentalidades, presta unos servicios cuya naturaleza requiere la mayor flexibilidad posible en sus aspectos operacionales. *Torres Arzola v. Policía de P.R.*, 117 D.P.R. 204, 211 (1986). A lo sumo, sería uno de los factores que habían de tomarse en consideración en la configuración de esa decisión discrecional.

█ Reconocemos que en el proceso de reclutamiento de las agencias gubernamentales —incluyendo la Policía de Puerto Rico— según el principio de mérito, no se toma en

cuenta la afiliación política del aspirante.([7]) Por ende, es razonable concluir que la composición de éstas la integran miembros de todo el *spectrum* político del país. En consecuencia, un traslado, una reasignación u otra determinación administrativa del poder nominador, siempre es susceptible de ser estimada y alegada por el afectado como discrimen por su afiliación política.

■ La Superintendencia de la Policía debe tener una amplia discreción gerencial para ordenar el traslado de sus oficiales fundamentado en las variadas necesidades del servicio que brinda. De ordinario, los tribunales no intervendrán con el ejercicio y la sabiduría de esa facultad. La fluidez situacional en la preservación del orden, la paz y la tranquilidad imponen una singular movilidad a su personal.

Concluimos que la prueba tendía a demostrar —contrario a la determinación del tribunal de instancia— que las razones del traslado de Gracia Ortiz fueron exigencias del servicio. Sus servicios se necesitaban para ocupar una plaza vacante en el Cuartel General de Hato Rey "por su conocimiento, su rango [y] su preparación". T.E., pág. 209. Más aún, la plaza que ocuparía, según el Coronel Zapata Rivera, exigía "una persona responsable, ...con buena disposición [y] disciplinada, en términos generales un oficial

---

([7]) La Ley de Personal del Servicio Público de Puerto Rico establece como política pública "el mérito como el principio que regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, *ni por ideas políticas* o religiosas". (Énfasis suplido.) 3 L.P.R.A. sec. 1311.

Por su parte, la Ley de la Policía de Puerto Rico de 1974 dispone en su Art. 8, en lo pertinente, que:

"(b) El Superintendente nombrará todo el personal civil de la Policía conforme a las disposiciones de las secs. 1301 a 1431 del Título 3. [Ley de Personal del Servicio Público de Puerto Rico.]

"(c) El Superintendente nombrará a los miembros de la Policía y cubrirá las vacantes a base de ascenso hasta el rango de Capitán, mediante un sistema de exámenes que sea confiable, moderno y científico." 25 L.P.R.A. sec. 1008.

excelente". T.E., pág. 225. Todos los indicadores objetivos son que el traslado se llevó a cabo a base de las cualidades profesionales de Gracia Ortiz y no de su afiliación política.

■ A la luz de lo expuesto, *se dictará sentencia que expide el auto, para revocar la Resolución y Orden de Interdicto Preliminar emitida el 13 de diciembre de 1994 por el Tribunal Superior, Sala de Mayagüez, y devolver el caso para la continuación de los procedimientos en forma compatible con esta opinión.*[8]

El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

---

[8] A diferencia del asunto del traslado, la jurisdicción sobre la acción de daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es exclusiva de los tribunales, ya que "[l]a Ley de Personal y su reglamento no conceden a J.A.S.A.P. la facultad de responsabilizar civilmente a las agencias administrativas que le violan los derechos estatutarios o constitucionales a los empleados públicos. Los remedios que dichos estatutos conceden se limitan a la reinstalación y al pago de los haberes dejados de percibir por los empleados públicos. 3 L.P.R.A. sec. 1397". *Cintrón v. E.L.A.*, 127 D.P.R. 582, 594 (1990).

En este caso también consignamos que "la mejor práctica es suspender la acción judicial para que una vez advenga final y firme el dictamen administrativo, se resuelva si proceden los daños reclamados". Íd., pág. 595.