ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **MARILUZ FERNÁNDEZ NEGRÓN**<br><br>Apelada<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE SEGURIDAD PÚBLICA; POLICÍA DE PUERTO RICO**<br><br>Apelantes | TA2026AP00084 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.:<br>**SJ2025CV06966**<br><br>Sobre:<br>Solicitud de Interdicto Preliminar y Permanente |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2026.

Comparece el Gobierno de Puerto Rico,[1] representado por la Oficina del Procurador General de Puerto Rico, (apelante) mediante un recurso de *Apelación,* en el que nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, el 5 de diciembre de 2025.[2] Mediante dicho dictamen, el foro primario denegó la *Moción de desestimación* radicada por el apelante, por sí y en representación del Departamento de Seguridad Pública y la Policía de Puerto Rico (Policía);[3] y declaró Ha Lugar la *Solicitud de injunction preliminar y permanente* presentada por la señora Mariluz Fernández Negrón (Sra. Fernández Negrón o apelada).[4]

---

[1] El Gobierno de Puerto Rico está compuesto por el Estado Libre Asociado, la Policía de Puerto Rico y el Departamento de Seguridad Pública.

[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de TPI, Entrada Núm. 18. Notificada y archivada en autos el 5 de diciembre de 2025.

[3] *Íd.*, Entrada Núm. 11.

[4] *Íd.*, Entrada Núm. 1.

A través de dicha determinación, el TPI también ordenó al apelante a cesar y desistir de continuar descontando una suma de $67.32 mensuales de la pensión de la Sra. Fernández Negrón, hasta que se resolviera finalmente la objeción a la factura de cobro; a responder una carta cursada por la Sra. Fernández Negrón a la División de Nombramientos y Cambios del Cuartel General; y a devolverle a la Sra. Fernández Negrón la suma total de las partidas descontadas de su pensión, dentro de un término final de veinte (20) días, contados a partir de la notificación de la *Sentencia* apelada.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de marras tiene su génesis el 5 de agosto de 2025 cuando la Sra. Fernández Negrón presentó una *Solicitud de injunction preliminar y permanente* contra el apelante, al amparo de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Artículos 675 al 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3421-3533.[5] Sostuvo que trabajó en la Policía de Puerto Rico (Policía) como Auxiliar en Sistemas de Oficina II por un periodo de 17.75 años, empero renunció el 30 de abril de 2013 con el propósito de acogerse a los beneficios de retiro temprano, conforme a la *Ley del Programa Incentivado de Retiro y Readiestramiento*, Ley Núm. 70 del 2 de julio de 2010 (Ley Núm. 70-2010), 3 LPRA secs. 8881 *et seq.*; con efectividad del 1 de mayo de 2013.

Adujo que, al amparo del Artículo 4(b) de dicho estatuto, *supra*, sec. 8883, tenía derecho a devengar una pensión equivalente al 42.5% de su salario vigente a la fecha de su renuncia- $2,346- mediante pagos quincenales. A pesar de ello, expresó la Sra. Fernández Negrón que le redujeron los pagos de $587.10 a $519.78,

---

[5] *Íd.*

desde marzo del 2025, sin que el Departamento de Seguridad Pública explicara el cambio, celebrara una vista ni le brindara la oportunidad de mostrar causa por la que no debió ser reducida la pensión. Además, la Sra. Fernández Negrón expuso que recibió una comunicación fechada el 8 de mayo de 2025 del antedicho departamento por la que le cobraron $19,120.31 ante alegado cobro indebido de las anualidades otorgadas desde el 2013 hasta el 2025. Alegó que, a través de una carta del 29 de mayo de 2025, cursada al Departamento de Seguridad Pública, suplicó que le explicaran por medio de un desglose el por qué se le había pagado la pensión indebidamente, empero no recibió explicación alguna.

Por tal razón, la Sra. Fernández Negrón suplicó del foro primario que ordenara la paralización de toda gestión de cobro por la supuesta deuda o dejara sin efecto la acción de cobro; ordenara al apelante a pagarle la pensión a la que tenía derecho a recibir, según la Ley Núm. 70-2010, *supra*; y concediera cualquier otro remedio que procediera en derecho o en equidad.

Luego de varios trámites procesales, el 25 de agosto de 2025, el apelante presentó una *Moción de desestimación*.[6] Adujo que procedía la desestimación, dado a que la Sra. Fernández Negrón no demostró que estuviese sufriendo ni que se encontrara en riesgo de sufrir un daño irreparable. Además, sostuvo que la Sra. Fernández Negrón tenía un remedio adecuado en ley mediante la presentación de una acción civil ordinaria por incumplimiento de contrato.

Por su parte, la Sra. Fernández Negrón presentó una *Oposición a moción de desestimación* el 8 de septiembre de 2025.[7] Alegó que ya estaba sufriendo un daño claro y real, pues le habían reducido el pago de pensión sin notificación previa y contrario a las normas del debido proceso de ley. Expuso la Sra. Fernández Negrón

---

[6] *Íd.*, Entrada Núm. 11.
[7] *Íd.*, Entrada Núm. 13.

que quincenalmente le estaban restando $67.32 de su pensión y desconocía la razón, al igual que la ecuación matemática, para ello. Además, expuso que el único acuerdo existente entre ella y el apelante fue que ella aceptó los beneficios de la Ley Núm. 70-2010, *supra*, por medio de la *Elección del empleado para acogerse a pensión tentativa*.[8] Por tal razón, solicitó del foro primario que denegara la petición de desestimación presentada por el apelante.

El 5 de diciembre de 2025, el TPI emitió una *Sentencia* en la que denegó la solicitud de desestimación del apelante, y declaró Ha Lugar la solicitud de *injunction* preliminar y permanente de la Sra. Fernández Negrón.[9]

Insatisfecho, el apelante presentó una *Moción de reconsideración* el 22 de diciembre de 2025.[10] Adujo que no se le violentó el debido proceso de ley a la Sra. Fernández Negrón ni existía un daño irreparable. Sostuvo que, ante la ausencia de un daño claro y palpable, la Sra. Fernández Negrón carecía de legitimación activa. También expresó que la Policía no descontó partida alguna de la pensión a la que tenía derecho la Sra. Fernández Negrón. En cambio, expuso que dicha agencia realizó un ajuste al pago de su pensión y, consecuentemente, a partir de marzo de 2025, la Sra. Fernández Negrón recibió la cantidad correcta por concepto de la pensión que siempre debió recibir; es decir, 42.5% de $2,446.00 al mes o un pago de $519.78 por cada quincena, más $100.00 de un aumento concedido, a tenor con la Ley Núm. 164 del 22 de julio de 2003. Ante lo anterior, suplicó la desestimación del recurso extraordinario solicitado por la Sra. Fernández Negrón.

---

[8] Véase, *Íd.*, Entrada Núm. 16, Anejo I.
[9] *Íd.*, Entrada Núm. 18. Notificada y archivada el 5 de diciembre de 2025.
[10] *Íd.*, Entrada Núm. 19.

No obstante, el foro primario emitió una *Resolución Interlocutoria* el 23 de diciembre de 2026 donde denegó la solicitud de reconsideración del apelante.[11]

Inconforme, el apelante radicó un recurso de apelación ante nos el 22 de enero de 2026 y expuso los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OTORGARLE UN REMEDIO INTERDICTAL A LA PARTE APELADA A PESAR DE QUE ESTA TIENE A SU DISPOSICIÓN UN REMEDIO ADECUADO EN LEY MEDIANTE UNA ACCIÓN ORDINARIA SOBRE INCUMPLIMIENTO DE CONTRATO Y DICHA PARTE NO ESTÁ SUJETA A SUFRIR DAÑO IRREPARABLE ALGUNO DEBIDO A QUE LA RECLAMACIÓN ES UNA PURAMENTE ECONÓMICA QUE PUEDE SER COMPENSADA CON EL PAGO DE DINERO.**

> **ERRÓ Y ABUSÓ CRASAMENTE DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER LA SOLICITUD DE INJUNCTION PRELIMINAR Y PERMANENTE PRESENTADA POR LA PARTE APELADA SIN CELEBRAR UNA VISTA PREVIA.**

Por su parte, la Sra. Fernández Negrón presentó un *Alegato de la parte apelada* el 20 de febrero de 2026.

## II.

### A.

Bajo nuestro ordenamiento jurídico, una persona puede solicitar la desestimación de una demanda presentada en su contra "cuando surja de las alegaciones de la demanda que alguna defensa afirmativa derrotará la pretensión del demandante". *Eagle Security Police, Inc., v. Dorado*, 211 DPR 70, 83 (2023); Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2. En lo pertinente, el inciso (5) de dicha regla establece que una parte demandada puede fundamentar su petición de desestimación invocando la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. Regla 10.2(5) de Procedimiento Civil,

---

[11] *Íd.*, Entrada Núm. 20. Notificada y archivada en autos el 23 de diciembre de 2026.

*supra*, R. 10.2(5); *Díaz Vázquez v. Colón Pena*, 214 DPR 1135, 1149 (2024); *Trans-Oceanic Life Ins., v. Oracle Corp.*, 184 DPR 689, 701 (2012). De esta forma, la desestimación que se solicita se dirige a atender el caso en sus méritos y no a sus aspectos procesales. *Eagle Security Police, Inc., v. Dorado, supra*, pág. 83; *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104-105 (2002).

Una vez se radica una moción bajo la Regla 10.2(5) de Procedimiento Civil, *supra,* los tribunales tienen la obligación de tomar como ciertos- y de la forma más favorable para la parte demandante- todos los hechos bien alegados en la demanda y que hayan sido aseverados de forma clara y concluyente. *González Méndez v. Acción Social*, 196 DPR 213, 234-235 (2016); *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 307. Asimismo, los tribunales están llamados a interpretar las alegaciones de forma conjunta, liberal y de la forma más favorable a la parte demandante. *González Méndez v. Acción Social, supra*, págs. 234-235; *Torres, Torres v. Torres Serrano*, 179 DPR 481, 501-502 (2010). Por lo tanto, para que proceda una solicitud de desestimación de esta índole, " 'tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor' ". *Eagle Security Police, Inc., v. Dorado, supra*, pág. 84 (*citando a Rivera Sanfeliz v. Jta. Dir. FirstBank, supra*, pág. 49).

Nótese que nuestro sistema jurídico no establece requisitos complejos para la redacción de una demanda. *Eagle Security Police, Inc., v. Dorado, supra*, pág. 84; Regla 6.5 de Procedimiento Civil, *supra*, R. 6.5. Lo anterior se debe a que "la finalidad del proceso legal está enmarcado en el principio rector de impartir justicia y no en

fórmulas técnicas en la redacción de las alegaciones". *Eagle Security Police, Inc., v. Dorado, supra,* pág. 84. Se desprende de la Regla 6.5(a) de Procedimiento Civil, *supra,* R. 6.5(a), que "[c]ada aseveración en una alegación será sencilla, concisa y directa. No se exigirán fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia". De igual modo, la Regla 6.1 de Procedimiento Civil, *supra,* R. 6.1, expone que:

> Una alegación que exponga una solicitud de remedio contendrá:
> (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
> (2) una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.

Así, "el demandante no está obligado a alegar todos los hechos que prueben su caso al incoar una causa de acción, es decir, no tiene que exponer con detalle el trasfondo fáctico en el que basa su reclamación". *Eagle Security Police, Inc., v. Dorado, supra,* págs. 84-85; *Teoniro v. Hospital Dr. Pila,* 159 DPR 777, 784 (2003). Es harto conocido que "el propósito de las alegaciones es notificarle de forma general a la parte demandada cuáles son las reclamaciones en su contra para que pueda comparecer a defenderse si así lo desea". *Eagle Security Police, Inc., v. Dorado, supra,* pág. 85.

**B.**

Por otro lado, la Regla 53 de Procedimiento Civil, *supra,* R. 53, dispone que "[l]a expedición de un *injunction* preliminar se regirá exclusivamente por lo dispuesto en la Regla 57 y en las leyes especiales aplicables en todo caso en que el remedio principal solicitado sea un *injunction* permanente". Véase además, Artículos 675-678, *supra,* secs. 3421-3424. Es harto conocido que un *injunction* es aquel "mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para

que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". Artículo 675 del Código de Enjuiciamiento Civil, *supra*, sec. 3421. Este recurso "se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico". *Plaza Las Américas v. N & H*, 166 DPR 631, 643 (2005) (*citando a Peña v. Federación de Esgrima de P.R.*, 108 DPR 147, 154 (1978)). Además, tiene como propósito prohibir u ordenar la ejecución de cierto acto para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en aquellos casos donde no hay otro remedio en ley. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010). A pesar de lo anterior, el *injunction* es un remedio extraordinario "dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos". *VDE Corporation v. F & R Contractors*, *supra*, pág. 40.

Para resolver si procede conceder el *injunction*, se debe identificar si la acción envuelve un agravio de patente intensidad al derecho del individuo que reclame urgente reparación. *García Ortiz v. Policía de PR*, 140 DPR 247, 253 (1996). Un daño irreparable es aquel que no puede ser satisfecho de forma adecuada por medio del uso de remedios legales disponibles. *Pérez Vda. de Muñiz v. Criado Amunategui*, 151 DPR 355, 373 (2000). De ahí, pues la parte promovente debe demostrar que, de no concederse dicho remedio, sufriría un daño irreparable. *Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 682 (1997).

Ahora bien, el *injunction* preliminar o *pendente lite* se debe evaluar a la luz de unos criterios; a saber, "1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; 2) su irreparabilidad o la existencia de un

remedio adecuado en ley; 3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; 4) la probabilidad de que la causa se torne en académica de no concederse el remedio; 5) y el posible impacto sobre el interés público"; al igual que la diligencia y la buena fe con la que ha obrado la parte peticionaria. *VDE Corporation v. F & R Contractors*, *supra*, pág. 41; véase además, Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3. Sin embargo, el propósito fundamental de dicho remedio es "mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio". *VDE Corporation v. F & R Contractors, supra*, pág. 41. Aun así, este cuarto criterio es concomitante con el segundo; es decir, la irreparabilidad de los daños o la existencia de un remedio adecuado en ley. *VDE Corporation v. F & R Contractors, supra*, pág. 41. Además, "la concesión de una orden de *injunction* preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión que lo ordene no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional". *VDE Corporation v. F & R Contractors, supra*, pág. 41.

Después de celebrar el juicio en sus méritos y previo a ordenar un *injunction* permanente, el tribunal debe considerar, nuevamente, la existencia de otro remedio adecuado en ley. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008). Los factores que se deben tomar en consideración para emitir este tipo de recurso son: "(1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público envuelto; y (4) el balance de equidades". *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 428.

**C.**

A tenor con nuestro ordenamiento constitucional, ninguna persona puede ser privada de su propiedad o libertad sin un debido proceso de ley. Artículo II, Sección 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley se manifiesta en dos dimensiones; a saber, la sustantiva y la procesal. *Domínguez Castro v. E.L.A.*, 178 DPR 1, 35 (2010). En su esfera sustantiva, el Estado está impedido de aprobar estatutos o realizar actos que afecten irrazonable, arbitraria o caprichosamente los intereses de propiedad o libertad de las personas. *Hernández v. Secretario*, 164 DPR 390, 394-395 (2005). Por otro lado, bajo su vertiente procesal, el debido proceso de ley impone al Estado la obligación de garantizar a los individuos que cualquier interferencia con sus intereses de libertad o propiedad se harán por medio de un proceso justo y equitativo. *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 398 (2011). Es decir, para que entre en vigor la protección que ofrece este derecho debe estar en juego un interés individual de libertad o propiedad. *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 888 (1993). Una vez se cumple esta exigencia, procede determinar cuál es el procedimiento exigido. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 888. Como consecuencia de este mandato constitucional, los procesos adjudicativos deben observar las garantías mínimas antedichas. *Román Ortiz v. Oficina de Gerencia de Permisos*, 203 DPR 947, 954 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *PVH Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales*, 209 DPR 122, 131 (2022).

**III.**

Según la *Sentencia* apelada, en el presente caso, el foro primario dictó Ha Lugar la *Solicitud de injunction preliminar y permanente* presentada por la Sra. Fernández Negrón, pues la División de Nóminas del Cuartel General nunca respondió la carta

de la Sra. Fernández Negrón solicitando el desglose de los pagos que supuestamente recibió de forma indebida. Lo anterior, a pesar de haberla remitido dentro del término de quince (15) días concedidos por la propia agencia. Por tal razón, el TPI resolvió que dicho acto violentó el debido proceso de ley de la Sra. Fernández Negrón y sostuvo que "hasta tanto la demandante no sea debidamente advertida de las razones que fundamentan la acción administrativa y de los derechos que le asisten en caso de estar en desacuerdo, la agencia está impedida de reducir los pagos que recibe por concepto de su pensión".[12] Así, el foro *a quo* ordenó al apelante a cesar y desistir de continuar descontando una suma de $67.32 mensuales de la pensión de la Sra. Fernández Negrón, hasta que se resolviera finalmente la objeción a la factura de cobro; a responder una carta cursada por la Sra. Fernández Negrón a la División de Nombramientos y Cambios del Cuartel General; y a devolverle a la Sra. Fernández Negrón la suma total de las partidas descontadas de su pensión, dentro de un término final de veinte (20) días, desde la notificación de la *Sentencia* apelada. En consecuencia, también denegó la solicitud de desestimación presentada por el apelante.

Inconforme, el apelante sostuvo ante nos que incidió el foro primario al conceder el *injunction* a favor de la Sra. Fernández Negrón, sin celebrar una vista previa y a pesar de que existía una reclamación de incumplimiento de contrato bajo la vía ordinaria para reclamar lo suplicado por la Sra. Fernández Negrón.

Por su parte, la Sra. Fernández Negrón adujo que la *Sentencia* apelada no atendió los méritos de la controversia; en otras palabras, no determinó si el pago de su pensión fue incorrecto. En cambio, alegó que dicho dictamen tuvo el efecto de salvaguardar su derecho constitucional a un debido proceso de ley, en su vertiente procesal.

---

[12] *Íd.*, Entrada Núm. 18, pág. 9.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incurrió en los señalamientos de error.

Como asunto de umbral, es meritorio expresar que, aunque el apelante impugnó la concesión del interdicto por parte del foro primario sin la celebración de una vista previa, es harto conocido que se debe garantizar el debido proceso de ley de las personas cuando han sido privadas de su derecho de libertad o propiedad. Artículo II, Sección 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. Entre las garantías mínimas que se deben observar, bajo este mandato constitucional, está la oportunidad de ser oído. *Román Ortiz v. Oficina de Gerencia de Permisos, supra*, pág. 954.

En el caso de marras, la Sra. Fernández Negrón se acogió a los beneficios de la Ley Núm. 70-2010, *supra*, el 30 de abril de 2013.[13] Dicho estatuto dispone que un empleado elegible puede retirarse o separarse voluntariamente de su empleo en el Gobierno de Puerto Rico a cambio de una pensión temprana, un incentivo económico u otros beneficios. Artículo 4(b) de la Ley Núm. 70-2010, *supra*, sec. 8883.

Conforme al acuerdo alcanzado entre las partes a tales efectos, la Sra. Fernández Negrón se obligó a recibir una pensión tentativa efectiva el 30 de abril de 2013, y menor a la establecida en el Artículo 4(b) de la Ley Núm. 70-2010, *supra*, sec. 8883;[14] a saber, 37.5%, en lugar del 42.5% correspondiente a los 17.75 años que la Sra. Fernández Negrón laboró en la Policía. El 6 de febrero de 2025, el Departamento de Seguridad Pública emitió una *Certificación* dirigida a la Sra. Fernández Negrón donde le informó de un reajuste de la pensión mensual original de $997.05 a $1,039.55.[15]

---

[13] *Íd.*, Entrada Núm. 16, Anejo I, pág. 4; *Íd.*, Entrada Núm. 1, *Certificación de pago de pensión.*
[14] *Íd.*, Entrada Núm. 16, Anejo I, pág. 2.
[15] La Sra. Fernández Negrón alegó en la *Solicitud de injunction preliminar y permanente* que "10. Para ese entonces la demandante devengaba un salario de

A pesar de lo anterior, el 8 de mayo de 2025, la Policía expidió una factura de cobro dirigida a la Sra. Fernández Negrón en la que expuso como descripción de la alegada deuda "[R]eajuste de Pensión Ley 70, por cobro indebido de la anualidad, desde el Año Fiscal 2013 hasta el Año Fiscal 2025, para un total de $19,120.31 a reembolsar" en o antes del 23 de mayo de 2025.[16] En dicha misiva, dicha entidad también expresó "[u]sted tiene hasta 15 días laborables después de recibida esta factura para objetar la misma. Dicha notificación puede hacerla por teléfono o por escrito a la dirección que se indica. De no recibir notificación alguna se continuará con el trámite del caso".[17]

A tales efectos, el 29 de mayo de 2025, la Sra. Fernández Negrón cursó a la Policía una carta solicitando un desglose de todos los años en los que alegadamente le pagaron indebidamente y que se le ofreciera un plan de pago adecuado.[18] Sin embargo, <u>nunca obtuvo respuesta</u>, por lo que presentó la *Solicitud de injunction preliminar y permanente* de epígrafe. Ciertamente, el apelante violentó el debido proceso de ley de la Sra. Fernández Negrón al no haberle concedido oportunidad de oírla y al no contestar su carta del 29 de mayo de 2025. Por ende, tal como resolvió el foro primario, procedía ordenar al apelante a contestar la carta.

Adviértase que la vista previa al *injunction* preliminar se puede obviar si la parte promovente demuestra la probabilidad de prevalecer por medio de prueba documental fehaciente que acredite el remedio solicitado. *Ramírez Kurtz v. Damiani Ramos*, 214 DPR 986, 1005 (2024). A esos efectos, como la Sra. Fernández Negrón demostró que se le violentó su derecho constitucional de ser oída,

---

$2,346 mensuales". *Íd.*, Entrada Núm. 1; Véase además, *Íd.*, *Certificación de ajuste.*
[16] *Íd.*, *Factura de cobro.*
[17] *Íd.*
[18] *Íd.*, *Carta.*

no era necesaria la celebración de una vista previo a conceder el remedio extraordinario.

Recuérdese además que la concesión del *injunction* preliminar es discrecional y uno de sus propósitos fundamentales es impedir la comisión o continuación de un acto denunciado de forma perpetua o por un periodo de tiempo limitado. Artículo 677 del Código de Enjuiciamiento Civil, *supra*, sec. 3423. Precisamente, por medio de la *Sentencia* apelada el foro primario emitió unas órdenes a los fines de impedir que el apelante continuara disminuyéndole la pensión a la Sra. Fernández Negrón cuando no le garantizó un debido proceso de ley. En particular, expuso que "[s]e ORDENA a los demandados el cese y desista de continuar descontando la suma de $67.32 mensuales de la pensión a la demandante, hasta que se resuelva finalmente la objeción a la factura de cobro"; y "[s]e Ordena que, en el término final de 20 días a partir de la notificación de esta Sentencia, se proceda a devolver a la demandante, la suma total de las partidas descontadas de su pensión".[19] (Énfasis omitido).

En cuanto al *injunction* permanente, expusimos en la sección anterior que después de celebrar el juicio en sus méritos y previo a conceder dicho recurso extraordinario, el tribunal debe considerar la existencia de otro remedio adecuado en ley. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 428. En el presente caso, la Sra. Fernández Negrón solicitó del foro primario que se le ordenara a la parte apelada a pagarle la pensión a la que tenía derecho a recibir, conforme a la Ley Núm. 70-2010, *supra*; específicamente, a base del 42.5% de su sueldo junto a un aumento de $100.00 efectivo el 1 de enero de 2004. Sin embargo, según el foro primario, el dictamen apelado no se extendió a la controversia relacionada con dicho porcentaje. Es decir, "únicamente se tomó en consideración la

---

[19] *Íd.*, Entrada Núm. 18, pág. 9.

notificación de cobro y la subsiguiente reducción de la pensión, sin que la demandante cuente con los pormenores que respaldan dicha acción. Además, la falta de respuesta por parte de la agencia colocó, a nuestro mejor entender, a la demandante en un estado de indefensión".[20] A esos efectos, el TPI emitió los remedios antedichos, y ordenó a la parte apelada a contestar la objeción a la factura realizada por la Sra. Fernández Negrón. Ciertamente, previo a evaluar la controversia relacionada al porcentaje que correspondería aplicar, conforme a la Ley Núm. 70-2010, *supra*, es necesario que la parte apelada cumpla en brindarle a la Sra. Fernández Negrón los fundamentos por los que redujo la pensión y que se agoten los remedios administrativos. En otras palabras, en estos momentos, no procede llevar a cabo un Juicio en su Fondo ni la evaluación para ordenar un *injunction* permanente sobre la controversia del porcentaje sin que se resuelva primero la misma a nivel administrativo.

Por tal razón, el TPI no cometió los señalamientos de error <u>uno</u> y <u>dos</u>.

**IV.**

Por las razones discutidas anteriormente, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[20] *Íd.*